# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**13-648**

MATTHEW ALAN HILLMAN

VERSUS

TIMOTHY WAYNE GRIFFIN

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20126328
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

**********

**MARC T. AMY**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and J. David Painter, Judges.

**REVERSED AND REMANDED.**

**Kenneth St. Pe'**
**Guilliot & St. Pe', LLC**
**428 Jefferson Street**
**Lafayette, LA 70501**
**(337) 232-8177**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Timothy Wayne Griffin**

**Adam G. Young**
**Laura N. Buck**
**Young & Cotter, LLC**
**315 S. College Road, Suite 163**
**Lafayette, LA 70503**
**(337) 261-8800**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Matthew Alan Hillman**

**AMY, Judge.**

This suit concerns allegedly defamatory statements concerning the plaintiff's abilities as a pilot sent by the defendant to the Federal Aviation Administration. After the plaintiff filed suit, the defendant filed an exception of lack of personal jurisdiction. The trial court granted the exception and the plaintiff appeals. For the following reasons, we reverse and remand for further proceedings.

### Factual and Procedural Background

The plaintiff, Matthew Alan Hillman, was involved in the potential sale of an aircraft to Jetstream Aviation, Inc. Jetstream is an Idaho corporation and the defendant, Timothy Wayne Griffin, is the president of Jetstream. According to the record, Mr. Griffin flew to Lafayette in order to meet Mr. Hillman and inspect the aircraft. Mr. Hillman flew the aircraft to Houston, Texas, and Mr. Griffin accompanied him as a passenger. The record indicates that, after the sale fell through, Mr. Hillman and Mr. Griffin had a dispute about who was to bear the costs of the flight.

Mr. Hillman asserts that, after he refused to pay the costs of the flight, Mr. Griffin threatened him. Thereafter, Mr. Griffin sent a letter to the Flight Standards Office of the FAA in Boise, Idaho. According to the record, the letter expresses concern about several issues with Mr. Hillman's conduct during the flight from Lafayette to Houston and with the maintenance of the aircraft. The record indicates that a subsequent investigation by the Flight Standards Office in Baton Rouge concluded that the majority of the accusations could not be substantiated. However, the investigation also concluded that the aircraft's registration and inspection were out of date, and the inspector issued a warning concerning those violations.

Thereafter, Mr. Hillman filed suit, alleging that Mr. Griffin's letter contained defamatory statements and that his reputation was damaged as a result. Mr. Griffin filed an exception of lack of personal jurisdiction. After a hearing, the trial court granted the exception and dismissed Mr. Hillman's claims. Mr. Hillman appeals, asserting as error that:

> 1. The Trial Court erred by granting Defendant/Appellee's Exception of Lack of Jurisdiction Ratione Personae because it failed to recognize that constitutional due process requirements are met.
>
> 2. The Trial Court improperly granted Defendant/Appellee's Exception of Lack of Jurisdiction Ratione Personae because it erroneously relied on Defendant/Appellee's misinterpretation of the holding in *Dumachest v. Allen*.

**Discussion**

*Personal Jurisdiction*

Both of the plaintiff's assignments of error concern the trial court's grant of the defendant's exception of lack of personal jurisdiction.

Lack of jurisdiction over the person is a declinatory exception addressed in La.Code Civ.P. art. 925. Jurisdiction over non-residents is governed by La.R.S. 13:3201, which states:

> A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
>
> (1) Transacting any business in this state.
>
> (2) Contracting to supply services or things in this state.
>
> (3) Causing injury or damage by an offense or quasi offense committed through an act or omission in this state.
>
> (4) Causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other

2

persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state.

(5) Having an interest in, using or possessing a real right on immovable property in this state.

(6) Non-support of a child, parent, or spouse or a former spouse domiciled in this state to whom an obligation of support is owed and with whom the nonresident formerly resided in this state.

(7) Parentage and support of a child who was conceived by the nonresident while he resided in or was in this state.

(8) Manufacturing of a product or component thereof which caused damage or injury in this state, if at the time of placing the product into the stream of commerce, the manufacturer could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and the manufacturer's marketing practices.

B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.

"The limits of the Louisiana long-arm statute and of constitutional due process are coextensive; the sole inquiry into jurisdiction over a nonresident is whether it comports with constitutional due process requirements." *Peters v. Alpharetta Spa, L.L.C.*, 04-979, p. 4 (La.App. 1 Cir. 5/6/05), 915 So.2d 908, 910-11. Personal jurisdiction may be either general or specific. *Id.* General jurisdiction exists where the defendant "has engaged in 'continuous and systematic contacts' with the forum, but the contacts are not necessarily related to the lawsuit." *Id.* at 911. Specific jurisdiction exists where "the alleged cause of action arises out of, or is related to the defendant's purposeful contacts with the forum state." *Id.* Under either theory, the determination of whether constitutional due process standards have been satisfied requires a two-part analysis of 1) whether the defendant has minimum contacts with the forum state and 2) whether the extension

3

of jurisdiction is consistent with traditional notions of fair play and substantial justice. *Hensgens v. Pelican Beach Resort*, 12-268 (La.App. 3 Cir. 10/10/12), 100 So.3d 371 (citing *de Reyes v. Marine Mgmt. & Consulting, Ltd.*, 586 So.2d 103 (La.1991)). *See also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154 (1945).

In determining whether minimum contacts exist, the court should focus on the relationship between the defendant, the forum, and the litigation. *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482 (1984). Thus, the defendant must have "purposefully availed [him]self of the privilege of conducting activities within the forum state such that it can be said [he] should have reasonably anticipated being haled into court there." *Woodard v. Univ. of Utah*, 00-789, p. 4 (La.App. 3 Cir. 11/2/00), 776 So.2d 528, 531 (quoting *Aetna Cas. & Surety Co. v. Cont'l W. Ins. Co.*, 97-206 (La.App. 3 Cir. 12/10/97), 704 So.2d 900, *writ denied*, 98-77 (La. 3/13/98), 712 So.2d 884), *writ denied*, 00-3199 (La. 1/26/01), 781 So.2d 1265. The purpose of this requirement is to protect the defendant from having to defend itself from suit in a foreign jurisdiction solely because of a "random, fortuitous, or attenuated conduct, or by the unilateral activity of another party or a third person." *Id.* (citing *de Reyes*, 586 So.2d 103). However, if sufficiently purposeful and egregious in its effects, a single contact may be sufficient to satisfy constitutional due process requirements. *First American First, Inc. v. Nat'l Ass'n of Bank Women*, 802 F.2d 1511 (4 Cir. 1986).

In *Calder*, 465 U.S. 783, the Supreme Court addressed whether personal jurisdiction exists over nonresident defendants where the alleged harm results from the publication of an allegedly defamatory newspaper article. In that case, the plaintiff, a California resident and entertainer, filed suit against a Florida

4

newspaper publisher and its editor and reporter who were involved in the publication of an allegedly defamatory story. The Supreme Court found that the defendants' intentional and allegedly tortious actions were expressly aimed at California and that the brunt of any injury would be felt in California. *Id.* In determining that personal jurisdiction existed over all three defendants, the Supreme Court stated that:

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms of both respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point of both the story and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the "effects" of their Florida conduct in California.

*Id.* at 788-89 (footnote omitted).

Applying the Supreme Court's reasoning from *Calder*, the United States Fourth Circuit Court of Appeals determined in *First American First*, 802 F.2d 1511, that personal jurisdiction existed where an Illinois non-profit professional association mailed allegedly defamatory letters concerning a Virginia travel agent to members of the association. The letters were mailed to members both in and out of Virginia. The Fourth Circuit found that "[t]hough the allegedly libelous letters were not directed only at the plaintiffs' actions in Virginia, there can be no doubt that the primary and most devastating effects of the letters would be felt in Virginia where [the plaintiff] lives and his business is principally located." *Id.* at 1517.

In contrast, in *Schnapp v. McBride*, 64 F.Supp.2d 608 (E.D.La. 1998), claiming that a Wisconsin newspaper published an allegedly defamatory story about him, a Louisiana resident filed suit against the newspaper, its reporter, and its insurance company. Analyzing the plaintiff's claims under the reasoning

5

enunciated in *Calder*, 465 U.S. 783, the federal district court judge noted that the plaintiff was not the focus of the article and that it was not purposefully targeted at either the plaintiff or Louisiana residents. *Schnapp*, 64 F.Supp.2d 608. Thus, finding that the article was not "calculated to cause injury" to the Louisiana plaintiff, the federal district court judge found that the plaintiff had not met his burden with regard to proving minimum contacts. *Id.* at 611.[1]

The burden of proof with regard to minimal contacts lies on the party claiming jurisdiction to be proper. *Hensgens*, 100 So.3d 371. However, once such minimal contacts have been established, there is a presumption that jurisdiction is reasonable and the burden shifts to the party opposing jurisdiction to show that jurisdiction would offend traditional notions of fair play and substantial justice. *Id.* Appellate review of the trial court's determination in an exception of personal jurisdiction is de novo. *Dumachest v. Allen*, 06-1614 (La.App. 3 Cir. 5/23/07), 957 So.2d 374, *writ denied*, 07-1306 (La. 10/5/07), 964 So.2d 939. However, the trial court's factual findings which underlie that decision are reviewed under the manifest error standard of review. *Id.*

Mr. Hillman concedes that general jurisdiction is not appropriate here. However, Mr. Hillman argues that because the effects of Mr. Griffin's defamatory statements were felt primarily in Louisiana, specific jurisdiction is appropriate. He

---

[1] Similarly, in *Woodard*, 776 So.2d 528, the plaintiff, a Louisiana resident, alleged that the defendants, a university in Utah and one of its employees, sent defamatory letters concerning his medical residency. The plaintiff's assertion of specific jurisdiction was based on an alleged "contract" negotiated between the parties which addressed the content of letters concerning the plaintiff's residency. Observing that the allegedly defamatory letters were not sent to any entity in Louisiana, that the university only conducted recruitment and alumni activities in Louisiana, and that the "contract" did not contemplate any activities in Louisiana, a panel of this court found that the plaintiff failed to establish minimum contacts with Louisiana. *Id.* Further, the court noted that "it is merely fortuitous that the Plaintiff . . . has relocated to Louisiana." *Id.* at 532. However, we note that the court in *Woodard* focused on the contractual allegations and did not address the "effects" test enunciated in *Calder*, 465 U.S. 783.

contends that Mr. Griffin "should have foreseen that a defamatory letter about a Louisiana pilot would cause injury to that pilot's reputation in Louisiana." Applying the Supreme Court's "effects" test as enunciated in *Calder*, 465 U.S. 783, to the circumstances of this case, we conclude that Mr. Griffin's contacts with Louisiana are sufficient to establish specific jurisdiction.

The petition indicates that Mr. Griffin's contacts with Louisiana are limited to his flight from Idaho to Lafayette to meet with Mr. Hillman and that he flew from Lafayette to Houston with Mr. Hillman to inspect the aircraft. However, a single contact may be sufficient to establish personal jurisdiction. *First American First*, 802 F.2d 1511. The allegations contained in the record indicate that although Mr. Griffin authored the letter in Idaho and sent it to an Idaho office of the FAA, the allegedly defamatory statements were focused on and were allegedly calculated to cause injury primarily to Mr. Hillman. *Compare with Schnapp*, 64 F.Supp.2d 608. Additionally, the brunt of any damages and the primary effects of any such defamatory statements would be in Louisiana where Mr. Hillman lives and his business is principally located. *First American First*, 802 F.2d 1511. Further, the fact that the investigation which allegedly damaged Mr. Hillman's reputation was carried out by federal officials does not insulate Mr. Griffin from responsibility for acts which resulted directly from any of his allegedly defamatory statements. *See Simon v. U.S.*, 644 F.2d 490 (1981) (finding personal jurisdiction in Louisiana over an attorney who made negligent or misleading statements to a federal judge in Georgia which ultimately resulted in a Louisiana resident being arrested on a bench warrant for failure to appear).

Finally, with regard to whether jurisdiction would offend traditional notions of fair play and substantial justice, because Mr. Hillman has established that

minimum contacts exist, there is a presumption that jurisdiction is reasonable and the burden of proof shifts to Mr. Griffin. *Hensgens*, 100 So.3d 371. We note that Louisiana has a strong interest in providing effective means of redress for its residents. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174 (1985). Further, modern conveniences have reduced the burden on a party who has to defend himself outside of his state of residence. *Id.* Additionally, based on the limited information available in the record, Louisiana would be at least equally efficient as a forum for this litigation as would Idaho. After reviewing the record, we note only general statements by Mr. Griffin that jurisdiction would offend traditional notions of fair play and substantial justice. We conclude that these statements do not meet his burden of proving that the Louisiana courts' exercise of personal jurisdiction is fundamentally unfair.

Accordingly, having found merit in Mr. Hillmans' arguments, we reverse the judgment of the trial court granting the exception of lack of personal jurisdiction and remand for further proceedings.

## DECREE

For the foregoing reasons, we reverse the trial court's judgment concerning the exception of lack of personal jurisdiction and remand for further proceedings. Costs of this appeal are assessed to the defendant, Timothy Wayne Griffin.

**REVERSED AND REMANDED.**